**Rex A. GHOLSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 85–504.**

District of Columbia Court of Appeals.

Submitted Sept. 15, 1987.

Decided Oct. 15, 1987.

---

1. D.C.Code § 22–3841(b) (1987 Supp.) provides: "A person commits the offense of forgery if that person makes, draws, or utters a forged written instrument with intent to defraud or injure another."

Wendell C. Robinson, Washington, D.C., for appellant.

Susan A. Nellor, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Helen M. Bollwerk, and J. Michael Hannon, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant Gholson of twelve counts of forgery, D.C.Code § 22–3841(b) (1987 Supp.),[1] twelve counts of uttering, *id.,* and one count of first degree theft, D.C.Code §§ 22–3811, –3812(a) (1987 Supp.). The trial court sentenced him to prison terms of one to three years for each count of forgery and for each count of uttering, and to three to nine years for the first degree theft. All sentences were to be served concurrently with each other but consecutively to any other sentence. Gholson appealed, seeking reversal of the forgery and uttering convictions on the ground that D.C.Code § 22–3841 does not make forging and uttering of time slips a crime.[2] Appellant does not challenge the validity of his theft conviction. We affirm.

---

2. Counsel for appellant states that he has reviewed the record to determine the sufficiency of the evidence for conviction. Citing *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel says that he "cannot in good faith" present that argument. We have reviewed the record and agree that that argument is meritless.

The facts are not in dispute. Appellant worked for Manpower Temporary Services. During the period between June 23 and November 2, 1983, he submitted for payment twelve time slips that did not represent work he had performed. The question on appeal is whether time slips fall within the definition of "written instrument" under the statutory prohibition of forgery and uttering. We conclude that they do. Contrary to appellant's argument, both the language of the statute and its legislative history support the trial court's conclusion that the written instruments enumerated in D.C.Code § 22–3841(a)(3) [3] are not intended to be exclusive.

> When interpreting a statute, we must "first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning," for "the primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used."

*Auger v. District of Columbia Board of Appeals and Review,* 477 A.2d 196, 211 (D.C.1984) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc), other citations omitted). The language of the statute is plain on the question whether the list of "written instruments" provided in § 22–3841(a)(3) is intended to be exclusive or illustrative, for it begins by saying " '[w]ritten instrument' *includes, but is not limited to,"* security, bill of lading, stamp, stock certificate, and so forth. (Emphasis added.) When the term "include" is used in a statute, "it is generally improper to conclude that entities not specifically enumerated are excluded." 2A

SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47.23, at 194 (Sands 4th ed. 1984) (citations omitted). The legislative intent that "include" be read as a term of enlargement rather than limitation is further underscored by coupling its use with the phrase "but not limited to." *Jackson v. Concord Co.,* 54 N.J. 113, 126–27, 253 A.2d 793, 800 (1969); *Pennsylvania Human Relations Commission v. Alto–Reste Park Cemetery Association,* 453 Pa. 124, 128, 306 A.2d 881, 885 (1973); *accord, Argosy Ltd. v. Hennigan,* 404 F.2d 14, 20 (5th Cir.1968).

Furthermore, the graduated penalty provisions for forgery and uttering make clear that the list of written instruments in § 22–3841 does not exclude unlisted items. Section 22–3842 reflects a three-tier penalty scheme. Depending upon the type of instrument forged or uttered, the statute provides maximum penalties of $10,000 plus ten years imprisonment, § 22–3842(a); of $5,000 plus five years imprisonment, § 22–3842(b); or of $2,500 plus three years imprisonment, § 22–3842(c). The statute reserves the most severe penalties, under subsection (a), for forgery of the kinds of instruments listed in § 22–3841(a)(3) and similar instruments. Thus, even in this subsection, the statute authorizes punishment for forging documents other than those listed in § 22–3841(a)(3). Next, subsection (b) of the penalty provisions contains items, such as fare cards and physicians' prescriptions, that not only are omitted from § 22–3841(a)(3) but also are dissimilar to those listed there. Finally, subsection (c), by its own terms, applies to "[a]ny person convicted of forgery ... *in any other case."* D.C.Code § 22–3842(c)

**3.** D.C.Code § 22–3841(a)(3) (1987 Supp.) provides:

"Written instrument" includes, but is not limited to, any:
(A) Security, bill of lading, document of title, draft, check, certificate of deposit, and letter of credit, as defined in Title 28;
(B) Stamp, legal tender, or other obligation of any domestic or foreign governmental entity;
(C) Stock certificate, money order, money order blank, traveler's check, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, trans-

ferable share, investment contract, voting trust certificate, certification of interest in any tangible or intangible property, and any certificate or receipt for or warrant or right to subscribe to or purchase any of the foregoing items;
(D) Commercial paper or document, or any other commercial instrument containing written or printed matter or the equivalent; or
(E) Other instrument commonly known as a security or so defined by an act of Congress or a provision of the District of Columbia Code.

(1987 Supp.) (emphasis added). This catch-all provision clearly demonstrates a legislative intent to penalize forgeries involving a broader, more varied class of instruments than those specifically enumerated in § 22–3841(a)(3).

The legislative history, moreover, makes inescapable the conclusion that the list of instruments in § 22–3841(a)(3) is intended to be merely illustrative of the kinds of instruments within reach of the statute. We recently concluded that "the legislature's intention [in adopting § 22–3841 was] to 'clarif[y] the offense of forgery' rather than to mark a new departure from existing law." *Driver v. United States*, 521 A.2d 254, 258 (D.C.1987) (quoting Clarke, *Report of the Committee of the Judiciary on Bill No. 4–133, the District of Columbia Theft and White Collar Crimes Act of 1982*, at 2 (D.C. June 1, 1982)) ("Report"). We specifically noted that the Council of the District of Columbia "[did] not manifest a desire ... to narrow the types of conduct punishable as forgery." *Id.* (citation omitted). In explaining the scope of that unnarrowed coverage of the forgery provisions, Councilmember Clarke explained:

> At common law, the offense of forgery was limited to actions involving obligatory instruments. The current forgery statute [D.C.Code § 22–1401 (1981)], however, refers to *any writing which might operate to the prejudice of another*. It is intended that the term "written instrument" as used in section 141 [D.C.Code § 22–3841 (1987 Supp.)] carry forward the same meaning. As such, [the] term is meant to be *"of almost limitless scope."*

*Extension of Comments on Bill No. 4–133: The District of Columbia Theft and White Collar Crimes Act of 1982*, submitted by Councilmember David A. Clarke ("Comments"), at 64 (July 20, 1982) (emphasis added; citation omitted). Section 22–1401, the predecessor of § 22–3841, applied not only to the kinds of documents which could be forged at common law but also to any writing of a public or private nature that might operate to the prejudice of another. *See Martin v. United States*, 435 A.2d 395 (D.C. 1981) (forgery of money orders); *Morgan v. United States*, 114 U.S. App.D.C. 13, 309 F.2d 234 (1962) (forgery of a registration card filed with Clerk of the U.S. District Court), *cert. denied*, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963); *United States v. Briggs*, 54 F.Supp. 731 (D.D.C.1944) (forgery of signature of prominent person to private letter sold by defendant to author).

Councilmember Clarke emphasized that "[t]he list of written instruments provided in subsection (a)(3) [of § 22–3841] is not intended to be exclusive." Comments, *supra*, at 64. Thus, "the term 'written instrument' is intended to cover other types of instruments and documents" as well. *Id.*, at 65. Similarly, the full Committee on the Judiciary, in reporting to the Council on the portion of Bill 4–133 that became § 22–3841, explained that the statute "provides a list, which is not exclusive, of items that constitute 'written intruments.'" Report, *supra*, at 17.

In sum, the language and legislative history of § 22–3841 make clear that the definition of "written instrument" is to have the broad construction of its predecessor statute; it is not to be restricted to the instruments enumerated in § 22–3841(a)(3). All written instruments that might operate to the prejudice of another—including the time slips at issue here—are covered by the statutory definition.

*Affirmed.*